USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/15/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Travis Antonio MARSHALL,

                Petitioner,

        -against-

PAUL ARTETA, Warden, Orange County
Correctional Facility; WILLIAM JOYCE, Acting
Field Office Director, New York Field Office,
U.S. Immigration and Customs Enforcement;
TODD M. LYONS, Acting Director, U.S.
Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security; and TODD
BLANCHE, Acting Attorney General of the
United States,

                Respondents.

---

1:26-cv-04110-MKV

ORDER DISMISSING PETITION
WITHOUT PREJUDICE TO
RENEWAL

**MARY KAY VYSKOCIL**, United States District Judge:

Petitioner initiated this action by filing a petition for a writ of habeas corpus under Title 28, United States Code, Section 2241. [ECF No. 1] (the "Petition"). The Court ordered Respondents (the "Government") to show cause within three days why the relief sought should not be granted, and afforded Petitioner five days thereafter to file any reply. [ECF No. 4]. The Government filed a memorandum of law, [ECF No. 7] (the "Opp."), supported by a declaration by Immigration and Customs Enforcement ("ICE") officer Dmitry Rousseau, [ECF No. 8] (the "Rousseau Decl."), and exhibits, [ECF Nos. 9-1–8]. Petitioner declined to file a reply.

**Background**

Petitioner is a Jamaican citizen who illegally entered the United States on April 15, 2023. Rousseau Decl. ¶¶ 2–3. The next day, he was encountered by Customs and Border Protection ("CBP") agents. *Id.* ¶ 4; [ECF No. 9-4] at 2. CBP charged him as removable under Title 8, United States Code, Section 1182(a)(6)(A)(i), [ECF No. 9-1] at 1, served him with a Notice to Appear, *id.*

1

at 2, and released him on his own recognizance, [ECF No. 9-2]. On April 26, 2023, the Government commenced a removal proceeding against him. Rousseau Decl. ¶ 6. A few months later, he was arrested in New York for assault. [ECF No. 9-5] at 5. ICE "understands that the charges were later dismissed." Rousseau Decl. ¶ 7.

Petitioner appeared, *pro se*, for two master calendar hearings before an immigration judge between 2023 and 2024, and in both instances his case was reset to afford him time to retain counsel. *Id.* ¶¶ 10–11. In the second instance, he also asked ICE to dismiss his case in an exercise of prosecutorial discretion, which ICE declined to do. *Id.* ¶ 11. In 2025, he filed an application for relief from removal. *Id.* ¶ 12.

On July 16, 2025, he was arrested as an "applicant for admission" under Title 8, United States Code, Section 1225(b)(2)(A), after a master calendar hearing at which he appeared *pro se*. Rousseau Decl. ¶ 13–14; [ECF No. 9-6]. At that master calendar hearing, his application for relief from removal had been deemed properly filed. Petition ¶¶ 36–40.

He made a request for review by an immigration judge of his initial custody determination, which was granted on July 28, 2025, and scheduled for August 6, 2025. Rousseau Decl. ¶ 17; [ECF No. 9-7]. On August 5, 2025, he submitted through newly retained counsel a motion to withdraw that request. Rousseau Decl. ¶ 18.

On August 6, 2025, he appeared with counsel at a master calendar hearing. *Id.* ¶ 19. Counsel, who had also appeared with Petitioner at a hearing on July 28, 2026, and requested a continuance, *id.* ¶¶ 16, requested another continuance. *Id.* ¶¶ 19. At that hearing, the immigration judge advised counsel that Petitioner's *pro se* application for relief from removal was incomplete, and that, were it not completed by the next hearing date, it would be deemed abandoned. *Id.* ¶ 19.

At the next hearing, Petitioner appeared with new counsel, who requested a further continuance, which was granted. *Id.* ¶ 21. Counsel requested and received yet another continuance at the following hearing. *Id.* ¶ 22. In both instances, the immigration judge admonished Petitioner and counsel concerning the timeliness of any renewed application for relief from removal. *Id.* ¶¶ 21–22.

Thereafter, Petitioner submitted through counsel an amended relief application, which was deemed abandoned because it was still incomplete. *Id.* ¶¶ 23–24. Petitioner now avers in this case that "[m]ultiple prior attorneys failed to properly prepare and present his case." Petition ¶ 50.

On September 17, 2025, the immigration judge ordered Petitioner removed to Jamaica. Rousseau Decl. ¶ 24. He appealed to the Board of Immigration Appeals ("BIA"). *Id.* ¶ 25. In that appeal, he "seeks remand so that he may present his claims for asylum, withholding of removal, and protection under the Convention Against Torture." Petition ¶ 7.

On December 2, 2025, Petitioner filed through counsel a renewed request for review by an immigration judge of his initial custody determination. Rousseau Decl. ¶ 29. Because Petitioner was detained under Title 8, United States Code, Section 1225(b)(2)(A), binding BIA precedent dictated that the immigration judge lacked jurisdiction to conduct such a review, and the request was denied. *Id.* (citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)).

In view of the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), ICE served Petitioner with a new Notice of Custody Determination on May 18, 2026. Rousseau Decl. ¶ 30; [ECF No. 9-8]. "Petitioner's detention is now governed by 8 U.S.C. § 1226(a)." *Id.* ¶ 31.

Petitioner declined to request review by an immigration judge of the May 18, 2026, custody determination.    [ECF No. 9-8].    As of the date the Government submitted its briefing, May 21, 2026, Petitioner still had not requested review.  Rousseau Decl. ¶ 31.

During the pendency of this matter, Petitioner has been detained in the Southern Distrct of New York.[1]  Petition ¶ 2; Rousseau Decl. ¶ 28.

Petitioner asserts that since entering the country he has fathered a child who is a citizen of the United States, that he lived with his family in the Bronx before he was arrested, that his child depends upon him, that he wants to continue to pursue his immigration case lawfully, that he has every reason to comply with court directives and appear at all future proceedings, that he recognizes that fleeing would destroy his case, and that he has been detained for over nine months during which time his family has suffered hardship because he has been unable to provide for them.  Petition ¶¶ 52–62.

"Petitioner . . . requests immediate release, or, in the alternative, a prompt constitutionally adequate bond hearing."  Petition ¶ 13.  Specifically, he "relies on" *Barbosa da Cunha* for the proposition that he "is entitled to meaningful individualized custody review," without which his "continued detention . . . violates due process."  Petition ¶¶ 63, 69–70.  He "does not ask this Court to decide the merits of [his] asylum case" or "to review the merits of [the] removal order" entered against him.  Petition ¶¶ 18–19.

### Analysis

The Government "acknowledges that *Barbosa da Cunha*, which is controlling in the Second Circuit, likely counsels treating Petitioner as subject to 8 U.S.C. § 1226."  Opp. at 3 n.1. The Government's reticence stems from a sentence in *Barbosa da Cunha* suggesting that

---

[1] Petitioner avers that he has been detained in Orange County since he was first arrested, Petition ¶¶ 40–42, but ICE attests to multiple transfers, Rousseau Decl. ¶¶ 14–15, 26–28.

"noncitizens . . . who cross the physical border into the United States but are apprehended at the threshold of initial entry" and then released remain subject to mandatory detention under Title 8, United States Code, Section 1225. *Id.* (quoting *Barbosa da Cunha*, 175 F.4th at 75 (quotation and emphasis omitted)). Because the Court's decision here does not reach the merits, the Court accepts the Government's concession that *Barbosa da Cunha* counsels treating Petitioner as subject to Title 8, United States Code, Section 1226.

Under the statutory provision that the Parties agree applies, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Such an alien "may" also be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2). "To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)). If the alien is detained, he may seek review in the immigration courts of the initial custody determination. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d).

Because "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), "the detention of any alien or the revocation or denial of bond or parole" is largely committed to Executive Branch discretion and insulated from judicial review, 8 U.S.C. § 1226(e). Of course, Section 1226(e) "does not preclude challenges to the extent of the Government's detention authority under the statutory framework as a whole" or "limit habeas jurisdiction over constitutional claims or questions of law." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted). Nevertheless, "'[d]ue process' is not a talismanic term which guarantees review in this court of

procedural errors correctable by the administrative tribunal." *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002).

Here, Petitioner has been detained without review of his initial custody determination for a constitutionally suspect duration. *See* Rousseau Decl. ¶ 14 (reflecting an initial arrest date of July 16, 2025). It is true that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" "periodic bond hearings every six months in which the [Government] must prove by clear and convincing evidence that the alien's continued detention is necessary." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). Nevertheless, the Second Circuit has held that, sometime between six and fifteen months, "due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." *Velasco Lopez*, 978 F.3d at 855 n.13; *see also Black v. Decker*, 103 F.4th 133, 150 (2d Cir. 2024) ("[A]ny immigration detention exceeding six months without a bond hearing raises serious due process concerns.").

Accordingly, had Petitioner been denied review of his initial custody determination since he was first arrested, this case might present a significant constitutional question appropriate for habeas corpus review. That, however, is not what happened here.

On December 5, 2025, Petitioner's request for a bond hearing was denied. *See* Rousseau Decl. ¶ 29. But prior to that, he had already been granted a bond hearing, *see id.* ¶ 17, although he withdrew his request before the hearing occurred, *see id.* ¶ 18.

More importantly, the December 5, 2025, denial was based upon an immigration judge's determination under then-binding BIA precedent that the immigration court lacked jurisdiction to conduct a bond hearing. *See id.* ¶ 29 (citing *Yajure Hurtado*, 29 I. & N. Dec. 216). But, since the Second Circuit held otherwise in *Barbosa da Cunha*, the Government has changed course. Petitioner was offered a bond hearing the day after this action was filed. *See* [ECF No. 9-8]. It

appears that he declined it, *see id.*, and the Government represents that he had not requested a hearing as of three days later, May 21, 2026. *See* Rousseau Decl. ¶ 31.

Providing an alien detained under Section 1226 with "the ***right*** to a hearing before an immigration judge" should ordinarily "satisf[y] due process." *Reno v. Flores*, 507 U.S. 292, 309 (1993) (emphasis original). But the Court need not decide that—or any other question of constitutional law—in this case. Instead, the Court simply observes that the Government's brief reads like an invitation to a bond hearing. *See* Opp. at 8 ("Because he is now indisputably detained under § 1226(a), Petitioner has a right to seek a bond hearing with the immigration court, at which he can present evidence and arguments in favor of release, which satisfies due process."). Petitioner need only accept.

"Although there is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus, courts generally do require such exhaustion as a prudential matter." *Guzman v. Joyce*, 786 F. Supp. 3d 865, 869 (S.D.N.Y. 2025) (cleaned up, quotations omitted). This prudential exhaustion requirement might give way when

> (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; [or] (4) in certain instances a plaintiff has raised a substantial constitutional question.

*Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003).

The purposes of administrative exhaustion include "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Id.* In deciding whether it will allow Petitioner to bypass the ordinary channels of agency review in favor of Article III intervention, the Court must consider these purposes. *See id.*

Practice in this district counsels in favor of requiring exhaustion here.  *See, e.g.*, *Castillo Lachapel v. Joyce*, 786 F. Supp. 3d 860, 864 (S.D.N.Y. 2025); *Guzman*, 786 F. Supp. 3d at 869–71 (S.D.N.Y. 2025); *Fontanelli ex rel. Bernal Garcia v. Francis*, No. 25-cv-7115 (JLR), 2025 WL 2773234, at *5–8 (S.D.N.Y. Sept. 29, 2025).

Petitioner has a non-futile remedy available to him in the administrative system:  The Government is offering him a bond hearing.  *See Guzman*, 786 F. Supp. 3d at 870–71 (recognizing that the immigration judge's "determination" on "a motion for bond . . . could potentially moot the habeas petition" and that "the question of whether Petitioner's yet-to-happen bond hearing complies with due process is not before this Court" (cleaned up, quotations omitted)).  That is precisely what he seeks.  *See* Petition ¶ 13 ("Petitioner respectfully requests immediate release, or, in the alternative, a prompt constitutionally adequate bond hearing.").

In the meantime, any "claim that prolonged detention constitutes an irreparable injury that may excuse exhaustion has been rejected by courts in this District." *Michalski v. Decker*, 279 F. Supp. 3d 487, 496 (S.D.N.Y. 2018).  "If incarceration alone were the irreparable injury complained of, then the exception would swallow the rule that the INS administrative remedies must be exhausted before resorting to the federal courts." *Paz Nativi v. Shanahan*, No. 16-cv-8496 (JPO), 2017 WL 281751, at *2 (S.D.N.Y. Jan. 23, 2017).

Finally, "an administrative proceeding beginning with a bond hearing is the appropriate avenue for [Petitioner] to challenge the substance of ICE's individualized determination, which is outside the Court's jurisdiction." *Fontanelli*, 2025 WL 2773234, at *8.  The very "purpose of the exhaustion requirement is to facilitate administrative resolution of issues that might render judicial review unnecessary," particularly where those issues are "constitutional" ones that could "be resolved on a narrower factual basis." *Guzman*, 786 F. Supp. 3d at 871.

**Conclusion**

Accordingly, the Petition is DISMISSED without prejudice.  Petitioner must pursue a bond hearing in immigration court before he makes constitutional claims in a petition for a writ of habeas corpus.  He may file a renewed petition if the Government fails to make good on its offer of a constitutionally adequate bond hearing.

**SO ORDERED.**

**Date:  June 15, 2026**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

9